5-1-2-0 ADMARK v. United States You may proceed.  When the express promise in the Certificate of Independent Proposed Determination in this exchange service solicitation was breached in May of July of 1999, knowledge of the relevant factual circumstances was to use this court's decision in Holmes inherently unknowable, because the actors would not have revealed their conduct either to their employer or to ADMARK KOREA. Well, counsel, I think the most difficult thing that I see that you need to confront is on page 113 of the Joint Appendix, and this is the victim impact statement. All right. And in the victim impact statement, as I see it, on page 113, he says in 1998 and 1999 that he was aware of bribery and corruption. So why doesn't that indicate that your client was in fact on notice at that time of the exact facts that were later fleshed out, such that it would start the statute of limitations for them to bring a claim? All right. We need to go back and discuss the elements of the Tucker Act A-1 jurisdiction in this case, and we need to start with the fact that the court below has adopted the district court decision in MCI telecommunications. The MCI says that the procurement process instructions under which the exchange service operates do not implement a federal statute. They are not entitled to any force at all. He had nothing to protest, to claim, to go back to get access to the courts in 1999, because he didn't know the Certificate of Independent Price Determination had been violated. The earliest in this record that he knew that, he expresses in the July 27th electronic message to the reporter from Stars and Stripes, where he says, I found out what happened. They took a blank proposal and a filled-in proposal from this Korean company, and when they saw the concession fee that I offered, they wrote in a price for him, and it was higher. Are you saying that the statute of limitations has to turn on him knowing every single fact that would be necessary to ultimately prove his case? No, what I'm saying is he had to know the circumstances by which the Certificate of Independent Price Determination was violated. On page 113, he says, by 1999, our sources had informed us that Choi had negotiated a deal with Jiang of SSRT to receive a $100,000 bribe and a 5% per month kickback on future sales from SSRT. We wanted to accuse Choi and his group of corruption and bribery and abuse of position and authority. However, we had no real proof of this crime. Well, but that put you on notice. On notice of what? On notice that the bid that the folks put in wasn't independent. I don't think that that's no excuse. That's the issue, isn't it? That's really the issue. That's the core of it all. The core of it all, if you know that you lost a contract to somebody who bribed somebody else, then the fact that the person giving the contract and the person who paid the briber and six working together certainly suggests that there wasn't an independent price determination made by the bidder. But it's not proof. The only time that he had proof. But, I mean, the question is, were you on notice? Was he on notice? No, I don't think so. He had no idea how it was he had lost this competition. Somebody had said at the time that you knew about the financial deal, somebody had come to you as a lawyer and said, on what theory could we possibly now go to court? And you would say, by gone. They were no regulations that were enforceable. This was not the kind of organization that fit up with the regs. But the government has an obligation to only accept independent fare bids. And I smell a rat here. I smell a real rat here. And I'll bet you anything that that bid wasn't independent. Yes, but. And you could have filed a claim and you would have gotten by Rule 11. I don't think so. And that's a question then? Because whether or not if you brought this case earlier, you'd have been punished under Rule 11. I think you would have. The government has a presumption that it enjoys. But your letter or the letter from the victim impact statement says, our sources had informed us that Choi had negotiated a deal to receive a $100,000 bribe and a 5% month kickback. You don't have to have a smoking gun in the form of a videotape. Your letter says you had sources, i.e., multiple, that had informed you that he had given this contract because of a bribe. I don't see how you could have possibly been subject to a Rule 11 challenge if you have actual witnesses who are telling you that that is what has, in fact, occurred. I don't see how this doesn't put you on notice of everything. What fact did you not have, as exhibited in this letter from 1999 talking about it, that you later acquired? What fact? The fact that it was later acquired. What fact? The fact was that there were two proposals submitted by the Korean, one of which was blank and one of which was filled in. And once the actors looked at the proposal Edmark had made, it brought in a higher price for the Korean and on that basis gave the Korean the contract. But that's simply a question of learning how he manipulated the contract. Excuse me. Of learning how he manipulated the contract, not whether he manipulated the contract. I think he had to know how to get access to the court to survive Rule 11 and you don't go into the Court of Federal Claims and say, I think I lost this contract because it was a bribe paid. You're not even going to get discovery. Does he have another problem that arises from the same victim impact statement that Judge Moore is pointing to and that is that he explains in a couple places why he didn't go to court. And it had nothing to do with thinking he didn't have a case. It had to do with he didn't want to get himself at cross purposes because he had other business interests that he wanted to pursue or he had lawyers who told him he might have a sovereign immunity problem. But there was no indication in that victim impact statement that the reason he didn't go to court is that he didn't have adequate proof or somehow the fact that maybe there was some legitimacy to this contract. Well, he couldn't go to court based on violations of the procurement process regulations set out by the exchange service because they had no force in effect. The only thing he had was if there was a promise in the solicitation on which he had relied and indeed there was, it was a certificate of independent price determination. And the only way he could have had a case is prove that that certificate was not adhered to by the exchange service. The question is whether or not you could have filed a case having this theory and saying on information and belief, I'll tell you what I do know. I know that these guys were in cahoots and there was a bribe paid here. I know that. And on information and belief, I am of the view and I'd like some discovery because I do believe that the bid could not have been independent. It's just totally at odds with reality if the circumstances were such where there's a bribe going on that someone's paying money to get the contract, that there isn't going to be some kind of a shenanigan on the price to make certain that whoever gets it gets it at the price that they want consistent with the bribe. So, rule 11, that stuff is nowhere in the brief, but it just seems to me that's what the court is all about here, is whether you could have brought this case with this theory. Information and belief wouldn't have cut it because you would have had a 12B1 motion to dismiss for lack of jurisdiction. You wouldn't have got discovery. You would have never got beyond your information and belief. You would have been out of court. That's the way these things work. He had to have known in order for the six-year statute to begin to run that exactly what had happened and why there wasn't an independent price determination. That he didn't know until some time later, until after the news article appeared in Stars and Stripes. He didn't have a procurement protest in the sense that we think of it in the court's B2 jurisdiction. This is not a procurement case. This is a concession contract. The guy that gets it is the guy that meets the qualifications which the exchange service reserved the right to waive and it proposes the highest percentage of the gross profits. What happened was, as I have explained. You're starting to nick into your rebuttal time. You're free to keep going if you want. Let's hear from the government. Ms. Bientowski, am I saying that right? Yes. May it please the court. Admark Korea is attempting to bring a claim against the government more than 12 years from when it allegedly did not receive fair and honest consideration of its proposal. When you said allegedly didn't, I mean, isn't it pretty well established that Mr. Choi was not on the up and up? Yes, the evidence that we have before us only indicates that Mr. Choi and Samsung colluded on the 2009 contract. There was nothing that was disclosed in the Stars and Stripes article regarding this 1999 contract. In fact, Admark Korea still pleads its allegations upon information and belief in the complaint it brought in 2011 regarding the allegations of bribery and corruption. And because the Stars and Stripes article did not disclose anything pertaining to the 1999 solicitation, the Stars and Stripes article cannot serve as a trigger for the cruel suspension rule. And is your argument that there isn't anything disclosed in the Stars and Stripes article that they really didn't already know about in 1999 based on the victim impact questionnaire or statement? The victim impact statement evidences Admark Korea's knowledge in 1999 and is sufficient for the statute of limitations to be running. What is the standard? The standard for the accrual suspension rule is whether the government can conceal this act as a result that Admark Korea would not have known of its actions or whether it is inherently unknowable. Because we have the victim impact statement, we know exactly what Admark Korea was thinking in 1999. We know the insinuations it was trying to make in its 1999 agency appeal letter. From the victim impact statement, how do we know that there were two bids submitted, if you will? One had a price on it and one was blank? And that the bad guy could then fill in the number he wanted to? The victim impact statement does not specifically go into how the bribery was coordinated. That's what I think we need to talk about because I think Mr. Phillips has been quite candid in saying that's really the dividing line for him. Exactly. But at this point, we don't exactly know that that's how it was committed in 1999 because there is simply no evidence in the Stars and Stripes article or in the investigation that brings information and knowledge. Where did this information come from that we're talking about, about the fact that there were two bids and one was blank and one had a number on it? It comes from the investigation regarding Geong and Clifton Choi. And that does relate to this particular contract? No, it does not. It relates only to a 2001 contract. There is absolutely no... So that's how they did it in 2001? Yes. So we do not know how they did it in 1999. But we do know that in 1999, AdMark Korea learned from its sources the exact parameters of a bribery scheme, that there was a $100,000 bribery. So what... Assume that Mr. Phillips had been called up in 1999 and somebody said... And forget for a moment what Jojo Maui said about the fact that they didn't want to bring a case for other reasons. Mr. Phillips called up and said, Well, do we have a case here? You know, we know that there's been some bribery here. And we are highly suspicious of the fact that we lost and that a company won because of the bribery. What's the theory of our loss? It would be under Section 1491A1, the implied and fact contract theory. And through that theory, disappointed bidders have been permitted to bring a cause of action for breach of the implied duty to fairly honestly... And what would have been the... What duty was breached here? The duty to fairly honestly consider its proposal. And that includes having an independent bid? Is that the notion? There's been no implied fact contract theory regarding an independent bid, but that likely would be assumed in this implied duty to fairly honestly consider a contract. So if that were the nature of the cause of action, the fact that there had been bribery that you knew about would, in your view, be sufficient to support the complaint? Yes, Your Honour. At that point, we know that there were sources. Americrea could have theoretically obtained declarations from those sources, could have contacted investigative services with the Air Force to conduct an investigation. It's really impossible to know what would have happened and what they could have used to support their allegations. Do you have anything further? No, Your Honour. Would you like to hear regarding the alternative argument? Whether Americrea can recover beyond its bid proposal and preparation costs? It wasn't really touched upon, but if you want to, it's your time. No, I think we will rest on the arguments in our brief. Thank you. Mr. Phillips, I'm sorry. I sometimes forget that I have to comment. Let's talk about the implied contract. The implied and taxed contract. First thing, the government's lawyer kind of shot you in the heart, didn't she? Because she says the Stars and Stripes article is irrelevant. It doesn't deal with your contract. Well, I think all this talk about two bids and stuff, that's a different contract. Yes, but that's what's his. Where's the connection between the different contract and your contract? This court, remember that I made a distinction here, and you have to make a distinction between a procurement contract and a contract that comes before this court. As for instance, timber sales contracts are not procurement contracts. This is not a procurement contract. It's a concession contract. I understand that distinction, but what I'm saying is that... All right, let me get back to the distinction. The distinction is that you have said in Scott Timber that the implied and fact contract of A1 is not enforceable unless you get the express contract. So, where is there a contract, where is there a promise to be enforced, and that promise exists only in the certificate of independent price determination? That's what you're telling me. The government lawyer is telling me that the theory of your case would have been implied fair dealing. It has to be breach of the certificate of independent price determination because of your decision in Scott that says you don't get the implied and fact contract unless you get the express contract. So, the government concedes that there is an obligation on the government to independently and fairly assess your bid proposal. Now, they're not prepared to concede that in 1999 it wasn't independently and fairly assessed, but I think we all know it probably wasn't given how ingrained and expansive this fraud was. So, yes, there was unfair treatment at the hands of the government who put in place someone who was willing to engage in this kind of behavior, but you wait 12 years to do anything about it, and partially because you had other business reasons to wait 12 years. We had a right under the statute to wait six years from the date that we should have known that we had a case, and that date on this record is sometime prior to the electronic mail message you sent to the reporter from Stars and Stripes. That knowledge is the violation of the certificate of independent price determination because that's the only thing on this solicitation that the court below could enforce by way of violation. And receiving bribes and taking kickbacks doesn't fairly imply that there was not an independent price determination? Your Honor, the court has said since October you don't get the implied contract if you don't get the express contract, and Admark Korea didn't get the express contract. It really becomes that simple. Thank you. Thank both counsel. The case is submitted.